IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re Application of CALDERA MARINE
COMPANY LIMITED,

                Petitioner,

v.

MEDBROKERAGE & MANAGEMENT
CORPORATION

                Respondent,
------------------------------------------------------------X

CASE NO. _____

MISC. 11 0055

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ JAN 27 2011 ★
1/28/11
LONG ISLAND OFFICE

## APPLICATION FOR DISCOVERY ASSISTANCE
## BY CALDERA MARINE COMPANY LIMITED

Petitioner, CALDERA MARINE COMPANY LIMITED ("CALDERA") requests that the Court render discovery assistance with respect to foreign legal proceedings, pursuant to 28 U.S.C. § 1782, for the reasons stated below. This application is supported by Petitioner's separately filed Memorandum of Law in Support of Application for Discovery Assistance.

1. Petitioner, CALDERA, was at all material times the owner of the vessel M/V BLUDANCE (the "vessel"), a vessel flying the flag of Malta.

2. Petitioner requests that the Court provide discovery assistance with respect to ongoing foreign Arbitration Proceedings before an arbitration tribunal in the United Kingdom (the "Non-U.S. Proceedings").

3. Petitioner requests that Respondent, MedBrokerage & Management Corporation, which is present in the Eastern District of New York and maintains offices at 29 Continental Place, Glen Cove, New York 11542, be directed to provide the discovery described below in support of the Non-U.S. Proceedings.

Chalos & Co ref: 2068.015

1

4. Such assistance is expressly authorized by 28 U.S.C. § 1782, which provides that:

> The district court of the district in which a person resides or is found *may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal...* The order may be made . . . *upon the application of any interested person* and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

5. Section 1782 assistance is appropriate here because: (i) Respondent "resides at or is found" in this district; (ii) Petitioner is an "interested person" (as a party to the Non-U.S. Proceedings); and (iii) the Non-U.S. proceedings are each pending before "a foreign or international tribunal." *See Intel v. Advanced Micro Devices*, 542 U.S. 241 (2004).

6. Petitioner requests that Respondent be directed to provide documents in accordance with the Federal Rules of Civil Procedure.

7. The specific discovery that Petitioner seeks from Respondent is set forth at Exhibit "A" to this application.

8. In light of the foregoing, Petitioner respectfully request that this application for assistance be granted. A proposed order is attached hereto as Exhibit "B".

DATED:    January 26, 2011
                Oyster Bay, New York

                                      Respectfully submitted,

                                        CHALOS & CO, P.C.
                                        *Attorneys for Petitioner*
                                        CALDERA MARINE COMPANY LIMITED

                                        George M. Chalos, Esq. (GC-8693)
                                        123 South Street, Suite 105
                                        Oyster Bay, New York 11771
                                        Tel: (516) 714-4300
                                        Fax: (516) 750-9051
                                        Email: gmc@chaloslaw.com

# EXHIBIT A

EME_ACTIVE-552741892.1

## DOCUMENTS TO BE PROVIDED

Petitioner requests that Respondent be directed to provide it with the following documents within fourteen (14) days of the Court's order granting discovery assistance:

1. Copies of all correspondence between ice advisor Mr Cyril Jenkins and the Respondent.

2. Copies of all correspondence between the Respondent and Navitrans (appointed by the Respondent) in relation to the subject voyage (including after completion of the voyage).

3. Copies of all correspondence between the Respondent and any other party (including all sub-agents and other vessels timechartered by PBC for the same voyage for the period in question) in relation the subject voyage, including in respect of:

    (a) the ice conditions at St Lawrence / Baie Comeau,

    (b) the suitability of an ice advisor.

    (c) the appointment of an ice advisor

    (d) the route taken by the vessel to Baie Comeau

    (e) the damage to the vessel

    (f) the ice advisor's evidence

4. Copies of all correspondence between the Respondent and the sub-charterers of the vessel in relation to the Baie Comeau voyage.

2

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re Application of CALDERA MARINE
COMPANY LIMITED,

                                      CASE NO. _____

                 Petitioner,

v.

MEDBROKERAGE & MANAGEMENT
CORPORATION

                 Respondent,
-------------------------------------------------------------X

**ORDER GRANTING APPLICATION
FOR DISCOVERY ASSISTANCE**

THIS MATTER came before the Court pursuant to an Application for Discovery Assistance with Respect to Foreign Legal Proceedings (the "Application") by Caldera Marine Company Limited ("CALDERA" or "Applicant"), pursuant to 28 U.S.C. § 1782. Upon review of the application, Applicant's supporting memorandum, and the legal authorities associated with 28 U.S.C. § 1782, and being apprised of all pertinent matters, it is hereby ORDERED and ADJUDGED that:

1. The Applicant's Application is GRANTED.

2. Respondent, MedBrokerage & Management Corporation ("Respondent"), shall within fourteen (14) days of the service of this Order produce the following documents (or materials) to Applicant:

    a. Copies of all correspondence between ice advisor Cyril Jenkins and the Respondent;

    b. Copies of all correspondence between the Respondent and Navitrans (appointed by the Respondent) in relation to the subject voyage (including after completion of the voyage);

    c. Copies of all correspondence between the Respondent and any other party (including all sub-agents and other vessels timechartered by PBC for the same voyage for the period in question) in relation the subject voyage, including in respect of:

        i. The ice conditions at St. Lawrence / Baie Comeau;

        ii. The suitability of an ice advisor;

        iii. The appointment of an ice advisor;

        iv. The route taken by the vessel to Baie Comeau;

        v. The damage to the vessel;

        vi. The ice advisor's evidence.

    d. Copies of all correspondence between the Respondent and the sub-charterers of the vessel in relation to the Baie Comeau voyage.

3. The Court shall retain jurisdiction over this matter for the purpose of enforcing this Order and assessing any supplemental request for discovery assistance that may be requested by Applicant.

SO ORDERED:

_____
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re Application of CALDERA MARINE
COMPANY LIMITED,

                              Petitioner,

CASE NO._____

v.

MEDBROKERAGE & MANAGEMENT
CORPORATION

                              Respondent,
-----------------------------------------------------------------X

**MEMORANDUM IN SUPPORT OF APPLICATION FOR
DISCOVERY ASSISTANCE BY CALDERA MARINE COMPANY LIMITED**

**CHALOS & CO, P.C.**
123 South Street
Oyster Bay, New York  11771
Tel:  (516) 714-4300
Fax:  (516) 750-9051
E-mail:  gmc@chaloslaw.com

Attorneys for Petitioner
CALDERA MARINE COMPANY LIMITED

## INTRODUCTION

**COMES NOW**, Petitioner, CALDERA MARINE COMPANY LIMITED (hereinafter "CALDERA" or "Petitioner"), by and through undersigned counsel, and respectfully submits this Memorandum of Law in support of its Application for Discovery Assistance with Respect to Foreign Legal Proceedings (the "Application"). Specifically, Petitioner seeks discovery from Respondent, MEDBROKERAGE & MANAGEMENT CORPORATION (hereinafter "MEDBROKERAGE" or "Respondent") pursuant to 28 U.S.C. § 1782 ("Section 1782" or the "Statute") in aid of ongoing arbitration proceedings in London.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This dispute arises from a time charterparty agreement dated November 20, 2008 between CALDERA, as owner of the MV BLUDANCE, and Progress Bulk Carriers Limited ("Progress"), as charterers, for the use of the vessel to transport cargo for a period of between four (4) and about six (6) months. The vessel was delivered to Progress on November 23, 2008.

On January 14, 2009, the vessel was ordered by Progress to proceed to Baie Comeau, Canada. CALDERA advised Progress that ordering the vessel to Baie Comeau was not permitted under the terms of the charterparty because Baie Comeau was outside the Institute Warranty Limits and/or because Baie Comeau would be icebound by the time the vessel arrived at port. However, Progress maintained their order and the vessel proceeded to Baie Comeau.

On January 31, the vessel arrived at the mouth of the Cabot Straits where she was ordered to stop by CALDERA, as Baie Comeau was not an ice free port. However, following correspondence with the Progress, CALDERA agreed to allow the Vessel to proceed to Baie Comeau (under protest and strictly without prejudice to their rights under the charterparty).

In the course of the voyage, the vessel navigated through heavy ice and suffered significant damage. After leaving Baie Comeau, the vessel proceeded to Gibraltar and upon arrival, the hull was inspected by divers who reported that approximately 90% of the vessel's anti-fouling coating below the waterline had been stripped from the hull, there was a dent to the port bilge keel, and that the propeller blades had been dented.

CALDERA subsequently commenced arbitration in London against Progress for breach of various terms of the charterparty, and the sum of USD 376,675.89 is now claimed together with interest and indemnity costs.

Petitioner now seeks discovery assistance from this Court, pursuant to 28 U.S.C. § 1782, in aid of the ongoing arbitration proceedings in London between Petitioner and Progress. Specifically, CALDERA seeks an Order of this Court requiring MEDBROKERAGE, Progress's general agent[1], to provide documents in aid of the London arbitration. Although MEDBROKERAGE is not a party to the Arbitration proceeding in the United Kingdom, Respondent has in its possession and control vital evidence needed to respond to the dispute described herein between the Petitioner and the non-party, Progress. This evidence can only be obtained by a subpoena issued by this Court.

## ARGUMENT

### POINT I

### SECTION 1782 EXPRESSLY AUTHORIZES THE DISCOVERY ASSISTANCE HERE REQUESTED BY THE PETITIONER

28 U.S.C. § 1782 grants United States District Courts extremely broad authority to facilitate discovery in support of foreign legal proceedings against persons or entities residing or found in the court's district. The Statute embodies a longstanding Congressional policy favoring the liberal grant of assistance to foreign proceedings in hopes of providing efficient

---

[1] *See* About Us – Progress Bulk Carriers, http://www.progressbulkcarriers.com/about (last visited January 26, 2011). A copy of the relevant print-out from Progress Bulk Carriers' website is attached hereto as Exhibit "A".

assistance to participants in international litigation and encouraging foreign countries to provide similar assistance to our domestic courts. *See In re Application of Metallgesellschaft*, 121 F.3d 77 at 79 (2d Cir. 1997) ("The district courts must exercise their discretion under § 1782 in light of the twin aims of the statute: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts...'") (quoting *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 100-01 (2d Cir. 1992)).

Section 1782 provides, in pertinent part:

> The district court of the district in which a person resides or is found *may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal* . . . The order may be made . . . *upon the application of any interested person* and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

Accordingly, § 1782 assistance in the form of compelled document production is authorized against (1) any "person" that resides or is "found" in the district where the application is being made; (2) where the petition is made by "any interested person"; and (3) the information is sought for use "in a proceeding in a foreign or international tribunal." *See id.* These requirements are expressly satisfied in this case because: (1) the Respondent is "found" in this district, because they maintain their headquarters and regularly conduct business within the district; (2) Petitioner is an "interested person" because it is a party to the ongoing arbitration proceeding in London; and (3) the interested person, CALDERA, intends to use the information sought in a foreign Arbitration Proceeding.

## POINT II

## THE SUPREME COURT AFFIRMED THE BROAD APPLICATION OF § 1782 IN *INTEL CORPORATION V. ADVANCED MICRO DEVICES*

The wide scope of §1782 was expressly affirmed by the Supreme Court in *Intel Corporation v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), in which the Court reached the following holdings:

1. The "interested party" element of § 1782 includes aggrieved interests that are *not even* direct parties to the foreign proceeding for which discovery assistance is sought. *Id.* at 256-257.

2. The "foreign tribunal" element of §1782 includes investigative, quasi-judicial, administrative, or arbitral proceedings, which need not even be pending at the time a petition is made under the Statute. *Id.* at 258.

3. Discovery under § 1782 is available even where the type of discovery sought is not permissible in the foreign jurisdiction (*i.e.* – there is no foreign discoverability requirement). *Id.* at 253.

The Court explained these holdings as largely the product of a long history of legislative efforts to facilitate United States assistance to foreign courts, noting that "[s]ection 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Id.* at 247. The Supreme Court's authorization of assistance in *Intel* plainly underscores the broad availability of discovery under the statute.

## POINT III

## *INTEL* SUPPORTS THE GRANT OF DISCOVERY ASSISTANCE HERE

### A. Respondent is a "Person" that May be Compelled to Provide Discovery.

As a corporation, Respondent, MEDBROKERAGE, clearly qualifies as a "person" under § 1782, as the United States Code defines a "person" to include "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1. In addition, Respondent "resides" or "is found" in this judicial district because it maintains its headquarters and regularly conducts business within the Court's jurisdiction at 29 Continental Place, Glen Cove, New York 11542. CALDERA anticipates serving Respondent with a subpoena in this District upon the issuance of an order by the Court authorizing the discovery assistance requested.

### B. Petitioner is an "Interested Person" under the Statute.

There can be no dispute that Petitioner, CALDERA, qualifies as an "interested party" under § 1782. The Court's decision in *Intel* highlights the broad applicability of this standard. In concluding that the applicant, Advanced Micro Devices, Inc. ("AMD"), was an "interested party", the Court noted that under the European Union process for which assistance was sought, AMD had certain rights as a "complainant", including the rights to (1) prompt an investigation, (2) submit information for review by the Directorate General, and (3) seek judicial review in the event that the EU Commission discontinues the investigation or dismisses the complaint. *Intel*, 542 U.S. at 257. Here, the Petitioner is actually a party – the claimant – to the ongoing foreign arbitration. Accordingly, these ongoing proceedings will directly impact the Petitioner's substantive interest, with respect to which they have substantial enforceable rights.

### C. An Arbitration Panel Qualifies as a "Foreign Tribunal" under the Statute.

Section 1782's requirements that the discovery be sought "for use in a proceeding in a foreign or international tribunal," is also satisfied here because foreign proceedings are before an arbitration Tribunal in the United Kingdom. In *Intel*, the Supreme Court confirmed a much lower threshold for satisfying the "foreign or international tribunal" requirement by concluding that the Directorate General (*i.e.* - a governmental investigative body and <u>not</u> a court or other adjudicatory institution) is a "tribunal" for purposes of satisfying the requirements of § 1782. Moreover, the Court explicitly cited to authority for the proposition that "[t]he term 'tribunal' ... includes investigating magistrates, <u>administrative and arbitral tribunals</u>, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts." *Intel*, 542 U.S. at 248 (emphasis added).

In light of this expansive definition of the term "tribunal", the London arbitration proceedings clearly constitute a "proceeding in a foreign or international tribunal." In fact, other courts in this Circuit have authorized discovery under § 1782 where the information discovered was to be used in a foreign arbitration. *See, e.g., OJSC Ukrnafta v. Carpatsky Petroleum Corp.*, 2009 U.S. Dist. LEXIS 109492 (D. Ct. 2009) (discovery assistance granted in aid of Stockholm arbitration).

### D. Section 1782 Does Not Impose a Foreign Discoverability Requirement.

Finally, the court here need not undertake an assessment of the specific discovery procedures that may or may not be available abroad. In *Intel*, the Supreme Court expressly concluded that the § 1782 does not contemplate a foreign discoverability requirement. *Intel*, 542 U.S. at 253. The Court further rejected the "suggestions that a § 1782(a) applicant must show that United States law would allow discovery in domestic litigation analogous to the foreign proceeding." *Id.* at 263. The Court explained that the Statute "does not direct United States courts to engage in comparative analysis to determine whether analogous proceedings

exist here." *Id.* Pointedly, the Court asserted that such comparisons "can be fraught with danger." *Id.*

**POINT IV**

**THE COURT SHOULD EXERCISE ITS DISCRETION TO GRANT FOREIGN DISCOVERY ASSISTANCE**

A. ***Intel's*** **Guidance Regarding the Existence of Discretion**

Although the Supreme Court has strongly affirmed the broad reach of § 1782, the grant of judicial assistance remains a discretionary matter. In *Intel*, the Court identified four factors "that bear consideration in ruling on a § 1782 request." *Intel*, 542 U.S. at 265. While emphasizing that these four factors were not exhaustive, the Court stated that a court ruling on a § 1782 request should consider: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government, court, or agency to federal-court judicial assistance; (3) whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States; (4) whether the discovery requests are unduly intrusive or burdensome. *See Id.* at 264-265. Even when balancing these and other factors, however, the courts must exercise this discretion guided by "the twin aims of the statute," which "counsel heavily in favor of generous federal-court assistance". *In re Gemeinshcaftspraxis*, 2006 U.S. Dist. LEXIS 94161 at * 13 (S.D.N.Y. 2006).

B. **The Circumstances of this Case Support a Grant of Discovery Assistance**

An assessment of the pertinent factors weighs heavily in favor of granting the Petitioner's request for discovery assistance, especially in light of the Supreme Court's pro-assistance policy. As is detailed above, *Intel* is an exceptionally strong affirmation of the longstanding public policy underlying § 1782 favoring international discovery assistance. Granting Petitioner's request for relief here is consistent with the limited guidance provided

by the *Intel* court since Respondent is not a party to or participant in the Foreign Arbitration. The nature of the arbitration proceeding also does not implicate any factor or policy that would weigh against a grant of the Application. Moreover, granting the assistance requested by the Petitioner herein would not offend any foreign jurisdiction or constitute a circumvention of foreign proof-gathering rules. Finally, the requests are neither unduly intrusive nor burdensome.

## CONCLUSION

WHEREFORE, Petitioner respectfully submits that the Court should grant its motion for discovery assistance under 28 U.S.C. § 1782, as well as such other and further relief as it deems just and proper under the circumstances.

DATED:   January 26, 2011
         Oyster Bay, New York

> Respectfully submitted,
>
> CHALOS & CO, P.C.
> *Attorneys for Petitioner*
> CALDERA MARINE COMPANY LIMITED
>
> _____
> George M. Chalos, Esq. (GC-8693)
> 123 South Street, Suite 105
> Oyster Bay, New York 11771
> Tel: (516) 714-4300
> Fax: (516) 750-9051
> Email: gmc@chaloslaw.com

# EXHIBIT A

EME_ACTIVE-552741892.1

Progress Bulk Carriers Ltd. are very well-positioned among the other major drybulk players in terms of market coverage, financial strength, and creditworthiness.

- Home
- About Us
- Fixtures
- Events
- Contact Us



This is evidenced by the trust that our major clients have vested in us over the years as well as the credit that our major suppliers have granted us even in these difficult economic times.



Progress Bulk Carriers Ltd. has been in business as an operator since 1996. The company is mostly involved in time-charter operations and ship management. The company's main activity is ocean transportation of bulk commodities, ship management, and parcel freight services. Med Brokerage & Management Corp., New York, are general agents for Mssrs. Progress Bulk Carriers Ltd. Some of our major clients are, Toepher, Cargill, Mitsui, Transamonia, Gavilon Fertilizers, ED&F Man Sugar, Turkish Steel Mills, MUR USA, ADM, to name a few. It's also important to note that Progress Bulk Carriers Ltd was the biggest carrier for the Algerian Government's grain business for many years.

Our firm has unique strengths in the handysize-handymax segment of the drybulk sector with over 15 years of experience as a company. Our managing agents have a team of 12-14 professionals that have combined industry experience of well over 80 years.

Recently, our management has done a strategy reevaluation of the drybulk sector and has concluded that 2009/2010 is a perfect time to broaden our vessel positions. Through a highly qualified network of analysts and economists we follow all major markets that have impact on drybulk sector, including new building, vessel scrapping industries, crude oil and bunker fuels industries, foreign exchange, as well as other industries that impact drybulk sector, including all industries that affect global supply/demand economies of raw materials. Progress Bulk Carriers Ltd. are very well-positioned among the other major drybulk players in terms of market coverage, financial strength, and creditworthiness. This is evidenced by the trust that our major clients have vested in us over the years as well as the credit that our major suppliers have granted us even in these difficult economic times.

Progress Bulk Carriers © 2010